USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/29/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LUKEEN THOMPSON,

                       Plaintiff,

-against-

CITY OF WHITE PLAINS,

                       Defendant.

No. 13-cv-6602 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiff Lukeen Thompson was arrested on June 19, 2013 in connection with a May 9, 2013[1] robbery that occurred in White Plains, New York. (Def.'s Rule 56.1 Statement ("Def.'s 56.1") ¶ 7.) After Plaintiff was ultimately released and the charges against him were dismissed, (see Def.'s 56.1 ¶ 20; Compl. ¶ 15), Plaintiff filed the instant action against Defendants City of White Plains (the "City") and the White Plains Police Department alleging claims of false arrest, false imprisonment, negligence, and malicious prosecution arising under federal and state law. On July 16, 2014, Plaintiff withdrew his claims against the White Plains Police Department by a partial stipulation of dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2). (See Def.'s 56.1 ¶ 30.)

    Before the Court is Defendant's motion for summary judgment. Plaintiff has not filed any opposition to the instant motion. For the following reasons, Defendant's motion is GRANTED.

---

[1] The Court notes that there appears to be no evidentiary support in Defendant's Rule 56.1 materials for the proposition that the robbery occurred on May 9, 2013. Nevertheless, the date of the actual robbery appears inconsequential in light of the timeline for the remaining relevant events. (See Def.'s 56.1 ¶ 7.)

**BACKGROUND**

Plaintiff, a twenty-year-old male, lives in White Plains, New York, and at the time of his arrest was purportedly a member of the "100 Gang." (*See* Def.'s Mot. at 2; Def.'s 56.1 ¶¶ 1, 12.) The 100 Gang was comprised of young adults who lived in White Plains and committed robberies, referred to as "come-ups," around the Galleria Mall in White Plains between January and June 2013. (Def.'s 56.1 ¶¶ 4 – 6.)

On or about May 9, 2013, two Hispanic female victims were robbed near the Starbucks located in Fountain Park in downtown White Plains, adjacent to the Galleria Mall.[2] (*Id.* ¶ 7.) The White Plains Police Department arrested Eric Ortiz and Lanisha Howard in connection with the robbery. (*Id.* ¶ 8.) Following their arrests, Mr. Ortiz and Ms. Howard provided written statements to the police in which they described the details of the robbery and implicated an individual named "Luke." (*Id.* 9) Based on these statements, the police determined that Mr. Ortiz, Ms. Howard, "Luke," and perhaps others threatened the two women with a pellet gun, which looked like a real gun; demanded money, which they received; and proceeded to the Winbrook apartments, where some of the 100 Gang members resided, and purchased marijuana that they smoked together. (*Id.* ¶¶ 5, 10.)

Following the robbery, on or about June 7, 2013, Plaintiff was arrested in connection with an unrelated incident and charged with criminal possession of marijuana, to which he ultimately pleaded guilty. (*Id.* ¶ 11.) Following his arrest, Plaintiff told White Plains detectives that he was a member of the 100 Gang and provided information concerning other gang

---

[2] Defendant asserts that the robbery at issue met the "characteristics of a 'come-up'" and the "pattern . . . matched robberies committed by the 100 Gang." (Def.'s Mot. at 3; Def.'s 56.1 ¶ 7.) Defendant proffers evidence from the deposition of Detective Timothy Byrne for this proposition, but the deposition transcript pages presented to the Court do not provide complete support for these statements. (*See* Def.'s 56.1 ¶ 7 (citing Ex. E. at 16:6-17:3.)) At best, the Court can glean from the deposition that the 100 Gang committed robberies in downtown White Plains, near the Galleria Mall (*see* Def.'s 56.1, Ex. E at 10:23 – 11:6), but cannot confirm that the 100 Gang generally threatened victims "with a realistic looking pellet gun" or specifically robbed female victims. (*Id.* at ¶ 7.)

members who had been previously arrested for robbery and were currently in custody.  (*Id*. ¶ 12.)  Shortly thereafter, on June 14, 2013, the Westchester Intelligence Center of the Westchester County District Attorney's Office prepared a social media report for the White Plains Police Department on the 100 Gang, which included an analysis of social networking pages available on the Internet.  (*Id*. ¶ 13.)  One of the pages belonged to "Big Luke Mobbin."  (*Id*.)  The page contained a picture bearing a strong resemblance to Plaintiff, claims of affiliation with the 100 Gang, and conversations with other people involved in the 100 Gang that had been previously arrested.  (*Id.* at ¶ 13 *and* Ex. E at 12:17 – 12:21.)

On June 19, 2013, White Plains Police Department Detectives Timothy Byrne and Pete Valley went to Plaintiff's house, knocked on the door, and were let inside by Plaintiff's mother.  (*Id.* ¶ 15.)  Plaintiff agreed to speak with the detectives and to accompany them back to police headquarters.  (*Id.* ¶¶ 15, 16.)  At headquarters, Plaintiff was taken to an interview room and read his *Miranda* rights.  (*Id.* ¶ 17.)  Plaintiff initially agreed to speak with the detectives, but quickly changed his mind and the interview was ended.  (*Id.*)  Plaintiff was then informed that he would be arrested for robbery.  (*Id.*  ¶ 18.)

Plaintiff's arrest was purportedly based on the following: "(i) that two admitted participants in a robbery matching the characteristics of robberies committed by the 100 Gang stated that a 'Luke' also participated in the robbery; (ii) that [Plaintiff] told the police after his arrest on June 7 that he was a member of the 100 Gang and provided intimate information about certain known members of the gang; and (iii) information from a social media report prepared by the Westchester County District Attorney's Office to the effect that [Plaintiff] was a member of the 100 Gang and involved in gang activity."  (Def.'s Mot. at 4 (citing Def.'s 56.1 ¶ 19.))

Following his arrest, Plaintiff signed a document that he referred to as an "SCI," which he understood was a confession that he participated in the May 9, 2013 robbery. (Def.'s 56.1 ¶ 20). Plaintiff later withdrew the document on the advice of persons he met in jail, and was eventually released. (*Id.*)

Plaintiff did not serve the City with a notice of claim pursuant to Section 50-e of the New York General Municipal Law. Instead, Plaintiff filed his Complaint on September 18, 2013, asserting claims of false arrest, false imprisonment, negligence, and malicious prosecution. Plaintiff explained during his deposition that his claim against the City is based on his arrest of June 19, 2013, (*see* Def.'s 56.1, Ex. F at 88:17 – 20, 89:3 – 89:9); admitted that he did not have any information concerning the City's training of its police officers (*id.* at 88:21 – 88:23); and when asked whether he was claiming that the City does not adequately train its police officers, responded, "No. No Comment." (*Id.* at 88:24 – 89:2.)

## STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents [and] affidavits or declarations," *id.* at 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may also support an assertion that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party to identify "specific facts showing that there is a genuine issue for trial."

4

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal citation and quotation marks omitted).  A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013) (summary order).  Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal quotation marks omitted).  In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249.  Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250.

Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  The party asserting that a fact is genuinely disputed must support their assertion by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1).  "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).  The nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (internal citation and quotation marks omitted).

"The fact that there has been no response to a summary judgment motion does not . . . mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  "Even when a motion for summary judgment is unopposed, the district court is not

relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004). "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then 'summary judgment must be denied *even if no opposing evidentiary matter is presented.*'" *Id.* (quoting *Amaker v. Foley,* 274 F.3d 677, 681 (2d Cir. 2001)) (emphasis in original).

## DISCUSSION

**I.     Plaintiff's State Law Claims**

In federal court, "state notice-of-claim statutes apply to *state*-law claims." *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (citing *Felder v. Casey,* 487 U.S. 131 (1988) ("federal courts entertaining state-law claims against . . . municipalities are obligated to apply the [state] notice-of-claim provision"); *Fincher v. County of Westchester,* 979 F.Supp. 989, 1002 (S.D.N.Y. 1997) (New York's notice-of-claim requirement applies to pendant state law claims brought in federal court)). New York General Municipal Law § 50-e requires service of a notice of claim within 90 days after a claim arises "[i]n any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation." N.Y. Gen. Mun. Law § 50-e(l). Notice-of-claim requirements are "strict[ ]." *Hardy*, 164 F.3d at 793-94. Failure to comply warrants dismissal. *Id.*

Plaintiff's state-law claims for false imprisonment, negligence, and malicious prosecution[3] arise out of his June 19, 2013 arrest. (*See* Def.'s 56.1, Ex. F at 88:17 – 20; 89:3 – 89:9.) Plaintiff has not alleged that he served a notice of claim on the City. Nor has he requested

---

[3] It is not clear from the Complaint whether Plaintiff intended to bring his malicious prosecution claim under state or federal law. The Court will consider it under both theories of liability.

6

permission to file a late notice of claim, and the time to do so has expired. *See In re Dayton*, 786 F. Supp. 2d 809, 825 (S.D.N.Y. 2011) (holding that in no event may the court extend the time to file a notice of claim beyond the statute of limitations); N.Y. Gen. Mun. Law § 50-i (one year and ninety days statute of limitations on negligence actions brought against a municipality); N.Y. C.P.L.R. § 215 (one year statute of limitations for false imprisonment and malicious prosecution claims). Likewise, Defendant contends that Plaintiff never served a notice of claim on the City. (Def.'s 56.1 ¶ 24.) Accordingly, Plaintiff's failure to comply with General Municipal Law § 50-e requires dismissal of his state-law claims.

## II.     Plaintiff's Section 1983 Claims and *Monell* Liability

A municipality may be sued under 42 U.S.C. § 1983 only "when execution of [the] government's policy or custom . . . inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Therefore, any § 1983 claim against a municipal entity must "show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004). Here, Plaintiff asserts a false arrest claim against the City based on the City's custom, policy, and/or practice "of encouraging, approving and/or tolerating [the White Plains Police Department's] employees['] improper handling of civilians before, during and after arrests, and subsequent attempts to conceal such actions while failing to adequately train, supervise and discipline its agents, employees and/or officers." (Compl. ¶ 20.) Further, although Plaintiff's malicious prosecution claim appears to be based on a state law theory of liability, to the extent Plaintiff intended to use this claim as the basis for his *Monell* claim, the Court will consider it here.

"The elements of false arrest and malicious prosecution under § 1983 are substantially the same as the elements under New York law. Therefore, the analysis of the state and the federal claims is identical. The pivotal issue in th[is] . . . case is the presence, or absence, of

7

probable cause for both the arrest and subsequent prosecution of [Plaintiff]. If there was probable cause for the arrest, then a false arrest claim will fail. Similarly, if there was probable cause for the prosecution, then no malicious prosecution claim can stand." *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003) (internal quotation marks and citations omitted). In short, the existence of probable cause provides a complete defense to Plaintiff's false arrest and malicious prosecution claims. *See Covington v. City of New York*, 171 F.3d 117, 122 (2d Cir. 1999) (false arrest); *Husbands v. City of New York*, 335 Fed. App'x. 124, 128 (2d Cir. 2009) (malicious prosecution).

"Probable cause requires an officer to have 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (quoting *Martinez v. Simonetti,* 202 F.3d 625, 634 (2d Cir. 2000)). "Probable cause does not require absolute certainty[,]" *Boyd,* 336 F.3d at 76, and "[c]ourts should look to the 'totality of the circumstances' and 'must be aware that probable cause is a fluid concept–turning on the assessment of probabilities in particular factual contexts–not readily, or even usefully, reduced to a neat set of legal rules.'" *Panetta*, 460 F.3d at 395 (quoting *Caldarola v. Calabrese,* 298 F.3d 156, 162 (2d Cir. 2002)).

Defendant has sufficiently demonstrated the existence of probable cause for Plaintiff's arrest. The White Plains Police Department received statements from two participants in the robbery that an individual named "Luke" also participated in the robbery. (Def.'s 56.1 ¶¶ 9, 10.) The 100 Gang frequently committed robberies in the location where the May 9, 2013 robbery occurred and Plaintiff, Mr. Ortiz, and Ms. Howard returned to the Winbrook apartments following the robbery, where members of the 100 Gang resided. (*See* Def.'s 56.1 ¶¶ 5, 10, *and*

Ex. E at 10:23 – 11:6.)  Plaintiff previously admitted to detectives that he was a member of the 100 Gang and the Westchester County District Attorney's Office's social media report indicated the same.  (*Id.* ¶¶ 12, 13.)  Plaintiff also provided information to detectives about individuals in the 100 Gang who had been arrested for robbery and were currently in custody.  (*Id.* ¶ 12 and Ex. E at 11:20 – 12:1.)  In sum, the police had knowledge that a member of the 100 Gang named Luke had participated in a robbery that occurred in the location of robberies committed by the gang, and that Plaintiff had previously admitted to being a member of the gang.  Based on the totality of the circumstances, the police had sufficient knowledge and information to "warrant a person of reasonable caution" to believe that Plaintiff was involved in the May 9, 2013 robbery.  Thus, the existence of probable cause for Plaintiff's arrest provides a complete defense to Plaintiff's false arrest and malicious prosecution claims.

Because Plaintiff's underlying § 1983 claims fail, Plaintiff's *Monell* claim also fails.  "*Monell* does not provide a separate cause of action . . . [but instead] *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."  *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (emphasis in original).  Without any underlying constitutional violations, Plaintiff's *Monell* claim must be dismissed.

In any event, even if Plaintiff successfully asserted an underlying constitutional violation, Plaintiff's *Monell* claim still fails.  Courts in this Circuit apply a two prong test for § 1983 claims brought against a municipal entity.  *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) (internal citation omitted).  First, the plaintiff must "prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer."  *Id*. (internal citation omitted).  Second, the

plaintiff must establish a "'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Hayes v. Cnty. of Sullivan*, 853 F. Supp. 2d 400, 439 (S.D.N.Y. 2012) (quoting *City of Canton v. Harris,* 489 U.S. 378, 385 (1989)). A plaintiff is not required to identify an express rule or regulation in order to establish a *Monell* claim, and a court may infer a municipal policy from acts or omissions of the municipality's policy makers, but in the absence of other evidence, a "single incident of errant behavior is an insufficient basis for finding that a municipal policy caused plaintiff's injury." *Sams v. Rotundo*, 831 F.2d 397, 402-03 (2d Cir. 1987); *see also DeCarlo v. Fry,* 141 F.3d 56, 61 (2d Cir. 1998) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.") (quoting *Ricciuti v. N.Y. City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)) (internal quotation marks omitted); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 125 (1988) (plurality opinion) (explaining that only municipal officials with "final policymaking authority" concerning particular activities giving rise to plaintiff's claims "may by their actions subject the government to § 1983 liability") (internal citation omitted).

Here, Plaintiff's *Monell* claim is based on conclusory, boilerplate allegations, (*see* Compl. ¶¶ 20, 22, 25), and relates only to a single incident. (Def.'s 56.1 ¶ 21). According to Plaintiff, his *Monell* claim is not based on the City's failure to train its police officers, (*see id.* ¶ 23 *and* Ex. F at 88:24 – 89:2), and more importantly Plaintiff admits that he does not have any information concerning how the City trains its police officers. (*Id.* at 88:21 – 23.) Without any evidence whatsoever to support the existence of an unconstitutional municipal policy, Plaintiff's *Monell* claim against the City fails as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. The Court respectfully directs the Clerk to terminate the motion at ECF No. 18, enter judgment in favor of Defendant, and close this case.

Dated: July 29, 2015
       White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge